IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HAWAIIAN ISLE ADVENTURES, INC., | ) ) ) | CIVIL NO. 08-00574 SOM/KSC |
| Plaintiff, | ) ) ) | ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT |
| vs. | ) ) | |
| NORTH AMERICAN CAPACITY INSURANCE COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

I.      INTRODUCTION.

This is an insurance coverage dispute before this court as a diversity action.  Plaintiff Hawaiian Isle Adventures, Inc. ("HIA"), is a local outdoor recreation company that takes small groups of paying customers on ecological tours, which include hiking, snorkeling, and boogie boarding, as well as lectures on Hawaiian culture.  On July 15, 2004, Lee Townes drowned while snorkeling during one of HIA's outings.  In May 2006, Carolyn Townes filed suit against HIA in state court, alleging that HIA's negligence caused her husband's death.  HIA tendered the defense of the state-court suit to its commercial general liability insurer, Defendant North American Capacity ("NAC").  NAC, claiming that the insurance policy excludes coverage for claims

arising from Lee Townes's death while snorkeling, declined to provide a defense or coverage. HIA has retained counsel to defend it in the state-court action.

This court previously dismissed Counts II (tortious breach of contract) and V (negligence). NAC now moves for summary judgment on Counts I (breach of contract) and IV (declaratory judgment), arguing that it has no duty to defend or indemnify HIA in the state-court suit, in light of several exclusions in the policy. The court disagrees, finding the terms of the exclusions ambiguous. The motion for summary judgment is accordingly DENIED.

II.      SUMMARY JUDGMENT STANDARD.

Effective December 1, 2007, Rule 56(c) of the Federal Rules of Civil Procedure has been amended. Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007). "The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are

2

intended to be stylistic only." Rule 56 Advisory Committee Notes, 2007 Amendments. Because no substantive change in Rule 56(c) was intended, the court interprets the new rule by applying precedent related to the prior version of Rule 56(c).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is

3

material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." Nissan Fire, 210 F.3d at 1102-03. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Id. On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987.

III.   BACKGROUND FACTS.

A.   HIA's Request for Insurance.

HIA is a local business that takes customers on ecological tours, during which they receive lectures on Hawaiian culture and participate in outdoor activities including hiking, snorkeling, and boogie boarding. In 1999, a customer on an HIA hiking tour wandered off a hiking trail and fell 25 feet, breaking his pelvis. The insurance carrier settled out of court. After this incident, HIA expressed an interest in full liability coverage.

4

HIA submitted an insurance application on May 25, 2004. On May 26, 2004, NAC, through Golden Bear Management Corporation, provided an insurance quotation.  HIA agreed to the terms of coverage in the quotation and deposited $25,000 for the premium. NAC issued a binder outlining the terms of coverage the next day, which HIA accepted; NAC issued the insurance policy on July 19, 2004.

      B.   <u>The Policy.</u>

NAC insured HIA under a comprehensive general liability insurance policy ("Policy"), which provided:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

The Policy covered the period from May 27, 2004 to May 27, 2005, and insured HIA for up to $1,000,000 per occurrence.

      C.   <u>The Townes Suit.</u>

On May 8, 2006, Carolyn Townes brought suit against HIA, among others, for the wrongful death of her husband.  The lawsuit alleges that, on July 15, 2004, Lee Townes drowned while

participating in a snorkeling trip that "was offered, recommended, advertised, maintained, arranged, controlled, operated, sold, managed and supervised" by the defendants. The complaint further alleges that the drowning was caused by the defendants' negligence and/or gross negligence, and was in violation of the duty of reasonable care owed by those providing recreational activities to the public. The complaint provides no detail on the nature of the alleged negligence.

HIA tendered the suit to NAC for a defense and indemnification, but NAC has declined to provide a defense and has denied coverage. NAC points the court to exclusions that it claims preclude coverage.

First, NAC points to the exclusion for Designated Work ("Designated Work Exclusion"). That section states that the insurance policy does not apply to "bodily injury . . . arising out of 'your work' shown in the schedule." The schedule describes "your work" as "Waterfall Hiking, Snorkeling, Boogie Boarding & Surfing." The Definitions section of the Policy defines HIA's work in more detail:

> 21. "Your work" means:
>
>> a. Work or operations performed by you or on your behalf; and

6

       b. Materials, parts or equipment furnished in connection with such work or operations.

    "Your work" includes:
      a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      b. The providing of or failure to provide warnings or instructions.

    NAC claims that because the Townes suit alleges bodily injury sustained while snorkeling, which is described as part of HIA's "work," there is no coverage.

    NAC also relies on the exclusion for "Athletic or Sports Participants" ("Athletic Exclusion").  That exclusion also includes a schedule that describes HIA's operations as "Waterfall Hiking, Snorkeling, Boogie Boarding & Surfing."  The Policy then states, "With respect to any operations shown in the Schedule, this insurance does not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor."  Characterizing snorkeling as a "sport," NAC contends that injuries sustained by customers while snorkeling are not covered.

    Finally, NAC points to the language in the quotation issued by NAC through Golden Bear on May 26, 2004 ("Quotation"),

7

and the binder issued on May 27, 2004 ("Binder").  Both documents state that the "Designated Operations Limitation exclusion will apply excluding: All Sporting Events, Trail Hikes, Snorkeling, Boogie Boarding, and Surfing Activities."  As HIA accepted the terms of the Quotation and the Binder when seeking insurance coverage, NAC claims that these documents indicate the parties' clear intent to exclude injuries sustained by HIA's clients' while snorkeling.

IV.     ANALYSIS.

    A.   General Law Governing Insurance Contracts.

This is a diversity action.  See Complaint ¶¶ 1-2. Federal courts sitting in diversity apply state substantive law and federal procedural law.  See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001).  When interpreting state law, a federal court is bound by the decisions of a state's highest court.  Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  In the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d

940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)). "Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts." MMI Realty Servs. v. Westchester Surplus Lines Ins. Co., No. 07-466, 2008 U.S. Dist. LEXIS 93653 (D. Haw. Nov. 14, 2008) (citing Dawes v. First Ins. Co. of Haw., 883 P.2d 38, 42 (1994)). "Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended." Clarendon Nat'l Ins. Co. v. Smead, No. 06-434, 2007 U.S. Dist. LEXIS 42017 (D. Haw. June 7, 2007) (citing Dawes, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 665 P.2d 648, 655 (Haw. 1983)).  See also Haw. Rev. Stat. § 431:10-237 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.").  Therefore, "liability insurers have the same rights as individuals to limit their liability, and to impose whatever conditions they please on their obligation, provided they are not in contravention of statutory inhibitions or public policy." Dawes, 883 P.2d at 42 (citing First Ins. Co., 665 P.2d at 655).

However, because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguity must be resolved against the insurer.  Policies are to be construed in accordance with the reasonable expectations of a layperson.  Dawes, 883 P.2d at 42.

At the hearing on the present motion, NAC took the position that, if this court found the exclusions in issue to be ambiguous, the exclusions would automatically be inapplicable. That is, NAC stated that, as a matter of Hawaii law, an ambiguous exclusion would never preclude coverage.  This court questioned NAC as to whether a finding of ambiguity could ever lead to dueling presentations of evidence, at trial or in summary judgment papers, as to what the reasonable expectations of a layperson were, with any ambiguity remaining after such presentations construed against the insurer.  This court noted that it had not found a Hawaii appellate decision expressly foreclosing that possibility.  NAC conceded that there was no such decision but asserted that the requirement that an ambiguity be construed against the insurer meant that a finding of ambiguity automatically ended any issue with respect to the ambiguous provision.  Without deciding whether state law does, as

NAC posits, foreclose any trial concerning an ambiguity, this court holds NAC to this position for purposes of this motion.[1]

The burden is on the insured to establish coverage under an insurance policy. See Sentinel Ins. Co. v. First Ins. Co. of Haw., 875 P.2d 894, 909 n.13 (1994). The insurer has the burden of establishing the applicability of an exclusion. See id. at 914.

The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 922 P.2d 93, 108 (2000). The obligation to defend an insured is broader than the duty to indemnify. The duty to defend arises when there is any potential or possibility for coverage. Sentinel, 875 P.2d at 904. However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend. Pancakes of Haw. v. Pomare Props., 944 P.2d 83, 88 (1997). In

---

[1] In this case, while concluding that the Designated Work Exclusion is ambiguous, this court does not totally agree with the insured's reading of that provision. This court can imagine other circumstances in which there might be several insureds, each advancing a different reading of an ambiguous provision. This court does not in the present order decide how the forgoing situations might be resolved. There is no motion for summary judgment by an insured before this court, and the present ruling only denies the insurer's request for summary judgment.

other words, for NAC to obtain summary judgment on its duty to defend, NAC must prove that it would be impossible for a claim in the underlying lawsuit to be covered by the Policy. See Tri-S Corp. v. W. World Ins. Co., 135 P.3d 82, 97 (2006). "Hawaii adheres to the 'complaint allegation rule.'" Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) (citing Pancakes of Haw., Inc. v. Pomare Props. Corp., 994 P.2d 83 (Haw. Ct. App. 1997)).  In that regard,

> The focus is on the alleged claims and facts. The duty to defend "is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. 'Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend.'"

Id. at 944-45 (citing Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 872 P.2d 230 (1994)).

      B.    NAC Does Not Meet Its Burden of Establishing That the Designated Work Exclusion Applies.

Reading the Policy as a whole, the court concludes that the Designated Work Exclusion is ambiguous.

NAC asserts that the exclusion for injuries "arising out of 'your work' shown in the schedule" clearly refers to injuries that customers sustain while participating in the designated activities of waterfall hiking, snorkeling, boogie

boarding, and surfing.  NAC says that, by contrast, an injury sustained while traveling to a snorkeling site or while trying on a snorkeling mask away from any water would not fall within the Designated Work Exclusion.

HIA counters that the Designated Work Exclusion only precludes coverage to employees, who, in the scope of their employment, engage in waterfall hiking, snorkeling, boogie boarding, and surfing.  HIA notes that such an exclusion for injuries to employees is logical, given the availability of workers' compensation insurance, disability insurance, or medical insurance, all of which HIA purchased separately for its employees.

The Definitions section in the main body of the Policy defines "your work" as "work or operations performed by you or on your behalf."  See Policy at 13 (attached as page 35 of Exhibit E to NAC's Concise Statement).  This definition is not tied in any way to the activity in which a customer is engaged, which NAC urges should be the focus in determining the applicability of the Designated Work Exclusion.  NAC's focus on the customer's activity flies in the face of the very term "your work."  "Your work" suggests that the focus should be on what HIA and its agents do, not on what a customer does.

13

The court is struck by what appears to be the insurer's deliberate decision to have the Designated Work Exclusion apply to a different version of "your work" from what is defined as "your work" in the Policy's Definitions section.  The exclusion's reference to "your work" as consisting of specific activities such as snorkeling may well be an attempt to exclude injuries arising from an employee's act of snorkeling, not a customer's act of snorkeling.  Thus, for example, the exclusion could apply to an injury sustained by an employee while the employee was snorkeling.  Arguably, the exclusion could apply to an injury to a customer caused by an employee while the employee, as part of the employee's work, was snorkeling.  Suppose, for example, an HIA employee was demonstrating snorkeling in the water, and accidentally kicked a customer in the process.  This would be an injury arising from the "work" of snorkeling.

The state-court suit alleges very vaguely that Lee Townes's death was a result of HIA's negligence in operating, managing, and supervising the snorkeling tour.  NAC would have this court apply the Designated Work Exclusion solely because Mr. Townes died while snorkeling on the tour.  But it is not at all clear that the negligent operation, management, or supervision of a snorkeling tour is itself "snorkeling," which is part of "your work" in the exclusion.  For example, HIA may have been negligent in providing snorkeling instruction.  "[P]roviding of or failure

14

to provide warnings or instructions" is included in "your work" in the Definitions section, but is not necessarily included in "snorkeling" under the Designated Work Exclusion. If the state-court suit is premised on the provision of faulty snorkeling equipment, that might fall under the part of the Definitions section of "your work" that refers to "materials, parts or equipment furnished in connection with such work or operations." But provision of faulty equipment does not appear to be equivalent to snorkeling itself. Suppose HIA's negligence consisted of failing to account for all the customers before departing. A counting error might also be distinguished from the act of snorkeling. In short, NAC does not establish that the state-court action is actually based on negligence in the very act of snorkeling. At best, the Designated Work Exclusion is ambiguous.

As noted earlier, NAC's position is that, if this court rules that the Designated Work Exclusion is ambiguous, then the exclusion simply cannot apply. The court therefore need go no further in its analysis of the Designated Work Exclusion. However, the court notes that a conclusion that the Designated Work Exclusion is inapplicable comports with a reasonable layperson's expectation. Without adopting HIA's precise interpretation of the Designated Work Exclusion, this court notes that applying the exclusion would contradict the discussion NAC

15

had with HIA before providing the Policy.  From the time it requested coverage in May 2004, HIA made clear the nature of its business.  The initial e-mail to Golden Bear noted potential liability issues for injuries sustained by clients while participating in outdoor activities, noting the 1999 hiker's fall.  The pamphlet describing HIA's services detailed the various outdoor activities HIA offered, including hiking, snorkeling, and boogie boarding.  The insurance application noted that HIA's daily operations consisted of taking "groups of 10 or less on guided hiking tours, sightseeing, and beach activities." The Policy itself takes note of HIA's operations, describing the business as "Guided Trail Hikes and Beach Activities."  It also lists, "Description of Operations: Waterfall Hiking, Snorkeling, Boogie Boarding & Surfing."  NAC's interpretation of the Policy would exclude almost all situations in which a customer might sustain an injury, rendering the contract either illusory or close to illusory.

       NAC counters that, under its interpretation, the Policy would still cover bodily injury and property damage arising from the use of the business premises.  Given the exclusions for employee coverage, these would presumably be injuries only to customers at NAC's offices.  However, there is no evidence that customers regularly go to HIA's business premises at all.  Moreover, this would render irrelevant all the information HIA

had to provide about tours, snorkeling, and such activities, as those activities clearly did not occur at the business premises. Any office of a similar size in that location would need the same insurance. And while NAC maintains that the $25,000 premium is irrelevant to the interpretation of the Policy, that substantial charge is certainly consistent with a reasonable expectation of fuller coverage than NAC now posits.

### C. NAC Does Not Show That the Athletics Exclusion Applies.

NAC also relies on the Athletics Exclusion, which excludes any injury arising out of "any sports or athletic contest or exhibition that you sponsor." NAC reads this as excluding injuries resulting from (1) sports, (2) athletic contests, and (3) exhibitions. NAC's reading would clearly be correct if the exclusion referred to "any sport, athletic contest, or exhibition." However, as written, the exclusion may reasonably be read to refer to "contests or exhibitions" of an athletic or sports nature. The absence of a comma after "sports" and the use of the word "sports" rather than "sport" suggest that the word "sports" functions as an adjective, modifying "contest" (and possibly "exhibition"), in the same way "athletic" does, rather than as a noun with the same status as "contest" or "exhibition." Indeed, in Zurich Reinsurance (London) Ltd. v. Westville Riding Club, Inc., 82 F. Supp. 2d 1254, 1256 (E.D. Okla. 1999), aff'd, 203 F.3d 837 (10th Cir. 2000), the court,

17

considering the language in the exclusion to be unambiguous, read "sports" as an adjective.  See also Garcia v. St. Bernard Parish Sch. Bd., 576 So. 2d 975, 976 (La. 1991).

The Athletics Exclusion is a common feature in policies, sometimes written in different formulations.  Despite how common this kind of exclusion is, NAC cites no case that reads any version of the Athletics Exclusion as applicable to sports in general, even without a contest or exhibition.  See generally Tracy A. Bateman, Annotation, Construction and Application of Provision in Liability Insurance Policy Excluding Coverage for Injuries Sustained During Athletic or Sports Contest or Exhibition, 35 A.L.R.5th 731 (1996).  NAC appears to concede that snorkeling is not properly considered a contest or exhibition within the meaning of this exclusion; snorkeling involves neither competition nor performance and is rather a recreational activity.  Thus, if "sports" is an adjective modifying "contest" and/or "exhibition," the Athletic Exclusion is clearly inapplicable.

Even if "sports" functions as a noun, as urged by NAC, it is not clear that snorkeling falls within the plain meaning of "sports."  "Sport" is defined by Webster's as "an activity [that gives enjoyment or recreation], especially when competitive, requiring more or less vigorous bodily exertion and carried on, sometimes as a profession, according to some traditional form or

18

set of rules." Webster's New World College Dictionary 1297 (3d ed. 1997). "Sport" is defined by The American Heritage Dictionary as "physical activity that is governed by a set of rules or customs and often engaged in competitively." The American Heritage Dictionary 1680 (4th ed. 2006). NAC does not even suggest that snorkeling is governed by any traditional set of rules or customs, as provided by the dictionary definitions.

>    D.   The Policy Does Not Contain a Designated Operation Limitation.

Finally, NAC points to the language in the Quotation and Binder accepted by HIA. Both the Binder and Quotation state that "Designated Operations Limitation exclusion will apply excluding: All Sporting Events, Trail Hikes, Snorkeling, Boogie Boarding, and Surfing Activities." However, the Policy, which supersedes both the Binder and the Quotation, does not include this "Designated Operations Limitations Exclusion." Moreover, as this court noted with respect to the Designated Work Exclusion, NAC does not show that the negligence alleged in the state-court lawsuit was negligence in the act of snorkeling, as opposed to the distinguishable acts of, for example, providing instruction on snorkeling and operating snorkeling excursions.

V.      CONCLUSION.

NAC has not demonstrated that, under the clear terms of the Policy, the exclusions cited in the motion relieve NAC of a duty to defend or indemnify HIA in the state-court lawsuit.  The motion for partial summary judgment is accordingly DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 17, 2009.



　　　　　　　　　　　　　　　　　　 /s/ Susan Oki Mollway
　　　　　　　　　　　　　　　　　　Susan Oki Mollway
　　　　　　　　　　　　　　　　　　United States District Judge

Hawaiian Isle Adventures, Inc. v. North American Capacity Insurance Co., et al., Civil No. 08-00574 SOM/KSC. ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT.